**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------X
                                                                               CHAPTER 11

In Re:

CIRCLE FACTORY OUTLET, LLC,              Case No.: 09-22860 (MBK)


                                        Debtor.
---------------------------------------------------------X
CIRCLE FACTORY OUTLET, LLC and
GRAND PACIFIC FINANCE CORP.,

                                        Plaintiffs,
- against-
                                                      Adv. Pro. No. 09-1810 (MBK)

PEDDLERS' INVESTOR ASSOCIATES II,
LLC, CARL P. GROSS, GROSS, TRUSS &
HERSTIK, P.C., NEAL HERSTIK,
KIMBERLY M. GUADAGNO, as
MONMOUTH COUNTY SHERIFF.

                                        Defendants.
---------------------------------------------------------X        **OPINION**
APPEARANCES:

Scott T. Tross, Esq.
Rachel C. Engelstein, Esq.
Herrick, Feinstein LLP
One Gateway Center, 22nd Floor
Newark, NJ 07102
Attorneys for Plaintiffs Circle Factory Outlet
LLC and Grand Pacific Finance Corp.

Daniel M. Stolz, Esq.
Wasserman, Jurista & Stolz, P.C.
225 Millburn Avenue, Suite 207
P.O. Box 1029
Millburn, NJ 07041
Attorneys for Defendants Peddlers' Investor
Associates II, LLC and Carl P. Gross

Joseph C. DeBlasio, Esq.
Donald F. Campbell, Jr., Esq.
Giordano Halleran & Ciesla, P.C.
125 Half Mile Road
P.O. Box 190
Middletown, NJ 07748
Attorneys for Gross, Truss & Herstik, P.C.
And Neal Herstik, Esq.

Andrea I. Bazer, Esq.
County of Monmouth
Hall of Records
One East Main Street
Freehold, NJ 07728
Attorney for Kimberly M. Guadagno,
as Monmouth County Sheriff

**MICHAEL B. KAPLAN, U.S.B.J.**

I.    INTRODUCTION

This matter comes before the Court on the Complaint filed by Plaintiffs, Circle Factory Outlet, LLC ("Debtor") and Grand Pacific Finance Corp. ("GP," or together, "Plaintiffs") with respect to their claims against Peddlers' Investor Associates II, LLC ("Landlord"), Carl P. Gross ("Gross," and together with the Landlord, "Landlord Defendants"), Gross, Truss & Herstik, P.C. ("Law Firm"), Neal Herstik, Esq. ("Herstik," and together with the Law Firm, "Law Firm Defendants"), and Kimberly M. Guadagno, as Monmouth County Sheriff ("Sheriff"), together with counterclaims interposed by the Landlord.

The Landlord, previously represented by the Law Firm, is the owner of an outlet mall located in Wall Township, New Jersey. In 1984, the Landlord entered into a lease with Peddlers Village, Inc. ("Peddlers"), which was amended over the course of several years. On October 30, 1998, Peddlers borrowed funds from GP and, in exchange for the funds, granted GP a leasehold mortgage in Peddlers' interest in the lease. When Peddlers defaulted on the loan, GP foreclosed

2

upon the leasehold mortgage. Thereafter, GP assigned the lease to the Debtor. The Debtor is a New Jersey limited liability company that was formed for the purpose of holding GP's interest in the foreclosed leasehold. Its sole member is G.P. Main Street Development, Inc., which is wholly owned by GP. The instant dispute concerns circumstances surrounding the foreclosure sale processed by the Sheriff at the direction of GP as the foreclosing secured party.

## II.    JURISDICTION

The court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(b) and the Standing Order of the United States District Court dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper pursuant to 28 U.S.C. § 1409(a).

## III.   ANALYSIS OF CLAIMS

The following chart identifies, by count, each of the causes of action pursued in the litigation by Plaintiffs:

| COUNT: | CAUSES OF ACTION: |
|---|---|
| 1 | Reformation of Sheriff's Deed |
| 2 | Specific Performance of Sheriff's Agreement |
| 3 | Equitable Fraud |
| 4 | Declaratory Judgment under the Lease Agreements |
| 5 | Tortious Interference with Contractual Relations* |
| 6 | Tortious Interference with Prospective Economic Advantage* |
| 7 | Aiding and Abetting Breach of Contract* |
| 8 | Legal Fraud* |
| 9 | Conspiracy* |
| 10 | Unjust Enrichment* |
| 11 | Breach of Sheriff's Agreement** |
| 12 | Breach of the Covenant of Good Faith and Fair Dealing** |
| 13 | Promissory Estoppel** |

* These Counts are pled as to the Landlord Defendants and Law Firm Defendants only.
**These Counts are pled as to the Sheriff only.

The Landlord counterclaims, seeking the entry of a Judgment (1) declaring GP to be the proper tenant under the lease and finding the assignment to the Debtor to be null and void; and (2) terminating the lease, issuing a warrant for removal and awarding the Landlord compensatory damages for GP's breach of the lease and rent arrearages.

## IV.    FINDINGS OF FACT

The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[1]

1. On August 30, 1984, the Landlord entered into a lease ("Lease") with Peddlers concerning Lots 1 and 3 on Block 810 in Wall Township, New Jersey ("Property"). The Lease is scheduled to expire on May 31, 2050.

2. On October 30, 1998, GP provided financing to Peddlers in the form of two loans, one for $1,500,000, and the other for $3,500,000.

3. To secure the loans, Peddlers executed and delivered a leasehold mortgage to GP ("Mortgage") in the amount of $5,000,000.

4. After providing GP with copies of the Lease, the Landlord and GP executed a Landlord's Consent and Estoppel Certificate ("Estoppel Certificate"). The Estoppel Certificate bound the parties to the assignment provisions of the Lease, which prohibited assignment of GP's leasehold interest without the express consent of the Landlord.

5. On October 31, 2004, Peddlers defaulted on the loans. As a result, on November 11, 2006, GP commenced an action in the Superior Court of New Jersey, Monmouth County, to foreclose on the Mortgage.

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

6.   Prior to the foreclosure sale, GP entered into a preliminary agreement with a group led by Anthony Romano ("Romano Group"), which contemplated the Romano Group purchasing the leasehold interest prior to the issuance of a Sheriff's deed.

7.   On September 26, 2007, GP obtained entry of a foreclosure judgment. At the time the judgment was entered, the Superior Court entered a Writ of Execution directing the Sheriff to sell the leasehold interest.

8.   A Sheriff's sale was conducted on March 17, 2008, at which time GP successfully bid on Peddlers' interest in the Lease for the sum of $100 ("Sheriff's Sale"). GP executed a Foreclosure Purchase Acknowledgment ("FPA"), under which it was obligated to inform the Sheriff of any assignment of the bid within seven days from the date of the Sheriff's Sale.

9.   At the time of the Sheriff's Sale, GP had not solidified an agreement with the Romano Group.

10.  On March 27, 2008, Dale S. Orlovsky ("Orlovsky"), counsel for the Romano Group, called the Sheriff's office to request that the Sheriff agree to extend the customary two week period of N.J.S.A. 2A:50-64(c) for the delivery of a Sheriff's deed. Orlovsky spoke with a woman named Sheila Rosenthal ("Rosenthal"), a clerk in the Sheriff's office, who agreed to delay the issuance of the deed until GP's counsel asked the Sheriff to do so ("Agreement"). Orlovsky confirmed the Agreement by letter to the Sheriff dated March 27, 2008, also copying GP's counsel, the Landlord and the Law Firm. Additionally, GP's counsel, together with Orlovsky, called Rosenthal who confirmed that the Sheriff's office would not issue the Sheriff's deed until notified to do so.

5

11.     By mid-April 2008, GP had not requested that the Sheriff execute a deed.  As a result, by letter to the Sheriff dated April 21, 2008, the Law Firm demanded that the Sheriff issue a deed naming GP as purchaser and deliver it to GP.

12.     On or about April 24, 2008, the Sheriff executed and delivered the Sheriff's deed to the Lease naming GP as grantee.

13.     Beginning on March 17, 2008, GP performed as tenant under the Lease by remitting the rent payments due and insuring its leasehold interest.  However, in mid-November 2008, the Landlord received a rent check drawn on the account of the Debtor.  By letter dated November 21, 2008, the Law Firm wrote to GP inquiring as to why the rent check had been drawn on the Debtor's account.

14.     On December 3, 2008, GP responded by delivering to the Law Firm a deed dated September 3, 2008, evidencing an assignment of the Lease from GP to the Debtor.  GP did not provide the Landlord with notice of its intent to assign the Lease, nor did it obtain the Landlord's consent to do so.

15.     By letter dated February 23, 2009, the Law Firm advised GP's counsel and the Debtor that the purported assignment was not in compliance with the Lease and it continued to recognize GP as the proper tenant.

16.     Because the monies generated by the Property were insufficient to pay the rent due under the Lease, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on May 19, 2009.

17.     In response to the Landlord's motion to compel the Debtor to pay rent, the Debtor rejected the two leaseholds nunc pro tunc to the date of the petition. The Court entered an order to that effect on July 13, 2009.

18.     On May 21, 2009, the Debtor and GP filed the Complaint in the instant matter, seeking equitable relief and damages. An Amended Complaint was subsequently filed on June 12, 2009.

19.     In lieu of filing an Answer, the Law Firm Defendants filed a Motion to Dismiss, or alternatively, for Summary Judgment.

20.     On June 26, 2009, the Landlord filed an Answer and Counterclaim seeking declaratory relief and damages.

21.     On July 16, 2009, the Debtor and GP filed an Answer to the Counterclaim.

22.     On August 3, 2009, the Landlord moved for Partial Summary Judgment as to Count I of its Counterclaim.

23.     Thereafter, the Sheriff joined in the Law Firm Defendants Motion to Dismiss the Complaint pursuant to Fed. R. Civ. Proc. 12(b)(6).

24.     On September 17, 2009, the Law Firm Defendants filed a Motion for Sanctions for Debtor's attorney's alleged misconduct.

25.     A hearing was held on September 30, 2009, as to the various motions.

**V.    STANDARD OF REVIEW**

Since the Law Firm Defendants and Sheriff rely upon submissions to the Court (i.e., certification and exhibits) outside of the pleadings, to which Plaintiffs have had an opportunity to reply, the Court will exercise its discretion to evaluate the matter under both the dismissal standard and summary judgment standard pursuant to Fed. R. Bankr. P. 7056. See Levitt v.

7

Ridell Sports, Inc. (In re MacGregor Sporting Goods, Inc.), 199 B.R. 502, 515 (Bankr. D.N.J. 1995); Moran v. Paine, Webber, Jackson & Curtis, 279 F.Supp. 573, 578 (W.D.Pa. 1966) (court treated 12(b)(6) motion as one for summary judgment where movant filed matters outside the pleadings and nonmovant had opportunity to reply), aff'd, 389 F.2d 242 (3d Cir. 1968); In re Scionti, 40 B.R. 947, 948 (Bankr. D.Mass. 1984) (court treated 12(b)(6) motion as one for summary judgment where parties submitted a Stipulation of Facts along with the motion).

    A.    **Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b), a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed R. Civ. Proc. 12(b)(6); Fed. R. Bankr. P. 7012(b). A motion made under Rule 12(b)(6) challenges the legal sufficiency of a claim in order to determine whether it should proceed. Morris v. Azzi, 866 F.Supp. 149, 152 (D.N.J. 1994). "The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premise and destined to fail, and thus spare the litigants the burdens of unnecessary pretrial and trial activity." Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., 988 F.2d 1157, 1160 (Fed.Cir. 1993).

In considering a Rule 12(b)(6) motion, the reviewing court must accept as true all factual allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party. Gary v. The Air Group, Inc., 397 F.3d 183, 186 (3d Cir. 2005). To survive the motion, the complaint must "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

8

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).

### B. Motion for Summary Judgment

A court may grant summary judgment when there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). To prevail on a motion for summary judgment, the moving party must demonstrate that, based on the evidence presented, a reasonable trier of fact could not rationally find in favor of the non-moving party. Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007). Once the moving party has met its burden, summary judgment should be granted if the non-moving party fails to create an actual showing "sufficient to establish an element essential to that party's case, and on which the party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). None of the parties have identified any genuine material issues of fact warranting adjudication at trial. This matter involves only issues of law which are ripe for resolution by summary judgment.

## VI. DISCUSSION

Plaintiffs' claims are founded upon two basic assumptions, the first being that the Agreement between GP and the Sheriff was enforceable, and the second that it suffered damages as a result of the Agreement's breach. Plaintiffs' object in this litigation is clear – Plaintiffs seek any outcome under which GP is not treated as the responsible tenant under the Lease, with concomitant rental obligations for the balance of the Lease term. Consequently, the core issues before this Court, resolution of which impacts nearly all claims brought by Plaintiffs, is whether a valid contract existed and, if so, whether Plaintiffs suffered any damages by its breach. Simply

9

put, did the Sheriff's failure to comply with her obligations under the claimed Agreement have any bearing on the rights and responsibilities of GP as the foreclosing mortgagee on the Lease? Even if the Debtor or other third party had successfully bid on the Lease at the foreclosure sale, rather than GP, could such bidder have become the tenant under the Lease without the Landlord's prior consent? Alternatively, could there have been a valid assignment of the bid binding on the Landlord, absent the latter's consent? The resolution of these issues also determines the Landlord's assertion under the Counterclaim that GP is the proper party under the Lease.

For the reasons explained below, this Court finds that the Agreement was not enforceable, and even if it were, Plaintiffs did not suffer any damages because they were precluded from assigning the Lease without the Landlord's consent. Moreover, the Sheriff acted properly under the relevant statutes, leaving GP as the proper tenant under the Lease. Accordingly, the Court grants the Landlord's motion for partial summary judgment, and dismisses all counts in the Complaint.

We first turn to whether GP and the Sheriff entered into an enforceable agreement. Under New Jersey law, a valid contract requires the presence of an offer, acceptance and consideration. Smith v. SBC Comm'ns, Inc., 178 N.J. 265, 283 (N.J. 2004). "Consideration is the price bargained for and paid for a promise." Continental Bank of P.A. v. Barclay Riding Academy, Inc., 93 N.J. 153, 170 (N.J. 1983). Simply put, "both sides must 'get something' out of the exchange." Id. (quoting Friedman v. Tappan Development Corp., 22 N.J. 523, 533 (N.J 1956)). "[C]onsideration may take the form of either a detriment incurred by the promisee or a benefit received by the promisor." Id. The essential requirement is "a bargained-for exchange of

promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation. See Restatement (Second) of Contracts § 71 (1981)." Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 289 (N.J. 1988).

Here, there was no consideration to create a valid agreement. Orlovsky, counsel for the Romano Group, called the Sheriff's office to request an extension of the two-week period for issuing a deed. He spoke with Rosenthal, who promised to delay the issuance of the deed until there was a request by GP's counsel that it be issued. Although Rosenthal's promise constituted a benefit to the Romano Group, there was no detriment by or benefit to the Sheriff's office. Therefore, her promise alone was insufficient to constitute consideration.

Moreover, even if there had been valid consideration, Rosenthal, in her position, did not possess the authority to enter into the Agreement on behalf of the Sheriff's office. A public employee may contract on the behalf of her employer only if she has express or implied authority to do so. State of N.J. v. Erie R. Co., 23 N.J. Misc. 203, 212-13 (N.J. Misc. 1945) (citing Whiteside v. United States, 93 U.S. 247 (1876)); see also Cooper Medical Center v. Johnson, 204 N.J. Super 79, 82 (N.J. App. 1985). As such, "all persons dealing with [public] officers are charged with knowledge of the extent of their authority or power to bind the state and are bound at their peril to ascertain whether the contemplated contract is within the power conferred." Erie, supra, 23 N.J. Misc. at 213. Based on her uncontested certification submitted on behalf of the Sheriff, it is beyond dispute that Ms. Rosenthal was without authority to extend the time to deliver the deed.

As merely a clerk in the Sheriff's office, Rosenthal lacked both express and implied authority to contract with Orlovsky and GP. In fact, the record does not reflect any inquiry on

Case 09-01810-MBK    Doc 36    Filed 11/13/09    Entered 11/16/09 08:40:06    Desc Main
                           Document      Page 12 of 14

the part of Orlovsky or GP to ascertain whether Rosenthal was authorized to enter into the Agreement. Therefore, had there been a valid exchange of promises, Plaintiffs' contract-based claims would still fail because Rosenthal lacked the authority to enter into such an Agreement.[2]

Even were the Court to find the Agreement to be enforceable, Plaintiffs likewise would not be entitled to equitable relief because they did not suffer damages by the alleged breach of the Agreement. On October 30, 1998, GP and the Landlord executed the Estoppel Certificate which provides that GP would be bound by Section 18 of the Lot 3 lease and Section 17 of the Lot 1 lease. Section 18 of the Lot 3 lease, incorporated by reference into the Lot 1 lease, refers to the "Assignment" section of the lease agreements. That section prohibits assignment of the leasehold interests absent the written consent of the Landlord. By deed dated September 3, 2008, GP conveyed and assigned the Lease to the Debtor.

The record is clear that GP failed to obtain the Landlord's consent, and this Court finds that GP was without the authority to assign the Lease to be Debtor; accordingly, the assignment is null and void.[3] As such, GP did not suffer any damages as a result of the Agreement's breach. Simply put, even if the Agreement had been effective and GP requested that the Sheriff issue a

---

[2] During oral argument, counsel for the Landlord argued that the root of GP's problem was the decision by counsel to proceed with the foreclosure sale. While the Court agrees that many of the issues may have been avoided by scheduling a sale after obtaining the Landlord's consent to an assignment of the bid/leasehold, this Court views the genesis of GP's plight to have been the business decision to purse the Lease, with its extant assignment restrictions, as collateral for the underlying loan. Such a lending decision is akin to accepting environmentally contaminated property as collateral and then being compelled to assume clean-up responsibilities upon taking title at a foreclosure sale. The initial decision to accept the underlying collateral dictates the *Hobson's* choice ultimately facing the lender. In the case at bar, GP could have opted against pursuing a foreclosure, leaving the Landlord without the ability to seek recovery of rent under the Lease.

[3] The Court accords little weight to the distinction proffered by GP's counsel as to the assignment of the "bid" versus assignment of the "Lease." Were the Court to accept counsel's argument, GP could achieve through foreclosure what it could not accomplish otherwise. Through no fault of its own, the Landlord would face the possibility of losing a paying tenant (with tangible operations) and being forced, without its consent and contrary to the terms of the negotiated Lease and Estoppel Certificate, to accept a non-operating shell corporation as a new tenant.

deed naming the Debtor as grantee, such efforts would have contravened the terms of the Lease and not been binding upon the Landlord.

With the assignment to the Debtor a nullity, the question remains who is the proper tenant under the Lease? As the successful bidder at the foreclosure sale, GP was vested with equitable title to the Lease. In re Connors, 497 F.3d 314, 320-21 (3d Cir. 2007) (noting that property is essentially "'sold' at the foreclosure auction," even though "delivery of the deed conveys legal title"). This Court finds that the Sheriff acted properly and in accordance with N.J.S.A. 2A:50-64(c) when it issued the deed naming GP as grantee. Pursuant to N.J.S.A. 2A:50-64(c):

> The sheriff's office shall, within two weeks of the date of the sale, deliver a fully executed deed to the successful bidder at the sale provided that the bidder pays the balance of the monies due to the Sheriff by either cash or certified or cashier's check. . . .

(Emphasis added).

When used in statutes, the term "shall" is mandatory language, leaving no opportunity for judicial discretion. National Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 661-62, 127 S.Ct. 2518, 2531-32, 168 L. Ed. 2d 467, 483-84 (2007).

Given that GP maintained equitable title to the Lease pursuant to the foreclosure judgment, and that the issuance of the deed was statutorily mandated, this Court finds GP to be the proper tenant under the Lease. Moreover, this Court finds that there was no wrongful conduct on the part of the Landlord or Law Firm Defendants in urging the Sheriff to comply with the clear dictates of the law and issue the deed naming GP as grantee after the expiration of the two-week period under N.J.S.A. 2A:50-64(c). Thus, there is no equitable relief available to Plaintiffs.

1

**VII.    CONCLUSION**

For the aforementioned reasons, the Court grants the Landlord's motion for partial summary judgment; and dismisses Plaintiffs' complaint with prejudice.  Counsel for Landlord is directed to submit a form of order.  Given the complexity of the issues and inasmuch as the Court finds it well within reason that Plaintiffs' viewed their legal position to be warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law, the Court denies the Law Firm Defendants' Motion for Sanctions in its entirety.

Dated: November 13, 2009

_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge